IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HELEN LEWIS, *et al.*,         }
                               }
    Plaintiffs,            }
                               }     CIVIL ACTION NO.
v.                             }
                               }     98-AR-2382-S
HOUSING AUTHORITY RISK         }
RETENTION GROUP, INC.,         }
                               }
    Defendant.             }

FILED 99 JUL 28 PM 3:36 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED JUL 28 1999

**MEMORANDUM OPINION**

    This case is *sui generis*. But aren't they all?  This case's distinctive procedural and factual features provide the only avenue upon which the court can march toward any rational ruling on pending cross-motions for summary judgment.  Whether or not this court's conclusions are rational will probably depend upon the viewpoints of the adversaries.  The parties agree that the facts that this court finds to be dispositive on the liability questions presented are undisputed.

    Housing Authority Risk Retention Group, Inc. (hereinafter referred to as "the Insurance Company"), a specialized insurer that says it is not an insurance company, and located in Connecticut, wrote a policy of insurance insuring Housing Authority of the City of Bessemer (hereinafter referred to as "the Authority"), and its employees, against enumerated risks. The contract contained, *inter*

24

*alia,* the following provisions:

    I.  DEFINITIONS

    The following words and phrases have special meaning throughout this Policy and are in quotation marks when used. PLEASE READ THEM CAREFULLY.

***

    F.  "Bodily Injury" means bodily injury, sickness or disease, mental anguish or mental injury, sustained by a person, including death resulting from any of these at any time.

***

    I.  "Damages" means those sums you are obligated to pay to or may be recovered by any person who has suffered loss or injury arising out of the risks covered under this Policy. For purposes of this Policy, under any Coverage Section, the "damages" for which we will indemnify you do not include any sums payable as fines, penalties, exemplary or punitive damages, or damage multiples as may be provided by statutory or common (case) law.

***

    W.  "Public Official" means any officer or member of the Board of Directors of the covered Housing Authority. This term includes non-officer employees, but only those who receive wages or salaries from you and only while they are acting within the scope of their employment.

***

    Z.  "Wrongful Act" means any actual or alleged error, omission, misstatement, act or neglect of, or breach of duty including misfeasance, malfeasance, or nonfeasance of you or an insured while acting in the capacity of a Public Official or a participant in law enforcement activities.

***

    II.  GENERAL TERMS AND CONDITIONS

    Please refer to each Coverage Section as they may contain exceptions or additions to these GENERAL TERMS AND CONDITIONS.

A. WHO IS AN INSURED

    NOTE: The Individual Coverage Sections may contain specific provisions regarding WHO IS AN INSURED. It is important to refer to each Coverage Section in addition to the following provisions.

    1. You are an insured.

    2. Each of the following is also an insured to the extent indicated:

    1. Your elected or appointed directors, officers, officials and commissioners, but only with respect to their duties as your directors, officers, officials, or commissioners.

    2. Your employees, other than those included in A above, but only for acts within the scope of their employment by you. However, none of these employees are covered for "property damage" to property owned or occupied by or rented or loaned to that employee, or any of your other employees except "autos"; or

B. LIMITS OF COVERAGE

    ...
    We shall not contend, in the event of any claim, that you are not liable in tort by virtue of the fact that you are a governmental instrument of public body. However, any maximum for such liability in tort established by law for governmental bodies will also serve to establish our limit of liability under this policy of any tort claimed to have been committed by you...

***

III. COVERAGE SECTIONS

Coverage is only afforded if a Limit of Coverage and/or Premium are shown in the Declarations for the particular Coverage Section or by endorsement.

A. COVERAGE SECTION A. BODILY INJURY AND PROPERTY DAMAGE

3

      LIABILITY (GENERAL LIABILITY)

                        \*\*\*

      2.   SPECIAL EXCLUSIONS

      In addition to the General Exclusions of the Policy, and unless specifically overridden or exempted herein, this Coverage Section does not apply to any liability for:

                        \*\*\*

      m.   Damage or loss of any nature or kind arising out of the Wrongful Act of your Public Official.

                        \*\*\*

B.   COVERAGE SECTION B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

                        \*\*\*

      2.   SPECIAL EXCLUSIONS

      In addition to the General Exclusions of the Policy, and unless specifically overridden or exempted herein, this coverage does not apply to any liability for damages resulting from "personal injury" or "advertising injury";

                        \*\*\*

      g.   Arising out of the Wrongful Act of your Public Official.

Sure enough, along came a flood that engulfed the Authority's public housing project, causing serious property damage and personal injury. Eight persons who allegedly sustained personal injury and/or property damage as a result of the flood filed suit in a state court against the Authority and August Kuhn ("Kuhn"), who was a top level Authority official. The plaintiffs in that suit, as permitted by Alabama procedural rules, also sued fictitious directors, officers, employees, agents and servants of

the Authority. Several other entities not directly connected to the Authority, but allegedly responsible in some way for the flood, were also made defendants. The complaint was multi-faceted. According to the Insurance Company's present memorandum brief, with which the court agrees on the point being made, the state court complaint contained "claims for negligence, wantonness, trespass, breach of warranty and conspiracy," and described specific acts of alleged wrongdoing. The complained of acts basically constituted allegedly faulty decisions respecting the planning and location of the housing project as predictably to create conditions for flooding. Plaintiffs sought both compensatory and punitive damages, but did not seek anything that could remotely be called "fines" or "penalties" or "damage multiples." After learning of the suit, the Authority formally called upon the Insurance Company to defend and to indemnify. Kuhn did not personally and separately notify the Insurance Company of the claims made against him, and did not personally and separately demand defense and indemnity.

The Insurance Company, after some degree of investigation (whether adequate or inadequate is not a pertinent question at this juncture), disclaimed any obligation to defend and denied any responsibility whatsoever in connection with the flood. It gave as its only reason for denying coverage that the state court plaintiffs' allegations were of "wrongful acts" by "public officials." The Insurance Company did not inform the Authority,

5

and has never informed this court, whether during the time the policy was in force there was any salaried or hourly employee of the Authority who was covered for his or her tortious misconduct within the meaning of the policy and for which coverage was afforded the employee and/or the Authority. In other words, the Insurance Company has not described any acts or omissions that could occur within the line and scope of the employment of an employee that would call for a defense and indemnity by the Insurance Company.

Without participation by, or direction from, the Insurance Company, the Authority obtained counsel, and they began to defend the Authority and Kuhn in state court action. After a successful mediation, the parties reached a settlement that was formalized in a written agreement. That agreement provided, *inter alia*, that consent judgments would be entered against the Authority in favor of the eight separate plaintiffs. The judgments were to range from $10,000 to $100,000 and would aggregate $560,000. The agreement also contained an assignment by the Authority "to Plaintiffs [of] all claims that it has against [the Insurance Company] that are legally assignable" up to the aggregate amount of the settlement. This court deduces that this provision was included because the law of Alabama precludes the assignment of a pending tort claim, such as a claim for bad faith refusal to pay. It is clear that the Authority only intended to assign to the flood injured plaintiffs

all claims it had against the Insurance Company for breach of contract, not to exceed the amounts necessary to satisfy the proposed consent judgments. The eight plaintiffs agreed not to execute on their judgments and to look for collection exclusively to any contract recovery obtained by the Authority from the Insurance Company.

The state court adopted the settlement agreement. Accordingly, it dismissed with prejudice all eight plaintiffs' actions against all defendants (including the defendants that were not parties to the agreement), that is, **except** the Authority. It entered eight judgments, aggregating $560,000, against the Authority in favor of the eight separate plaintiffs, concluding with the following limitation or *caveat*:

> It is declared that said judgment may be satisfied only from claims or actions under any insurance policy that The Housing Authority of the City of Bessemer had, or has, that covered, or covers the Plaintiffs' claims herein.

In recognition of the assignment, the state court had earlier provided:

> The Housing Authority of the City of Bessemer has transferred and assigned to the Plaintiffs its rights against Housing Authority Risk Retention Group, Inc. and has agreed to be re-aligned as a Plaintiff to assert such rights and to, alternatively, assign any recovery that it may receive against Housing Authority Risk Retention Group, Inc. to Plaintiffs.

The state court declined to re-align the parties. Neither the agreement nor the decree contained a finding with respect to what portions of the judgments represented compensatory damages, if any,

7

and what portions represented punitive damages, if any.

In a cooperative undertaking, with counsel for Helen Lewis, *et al* (the former eight plaintiffs) and counsel for the Authority and Kuhn (two of the former defendants) representing ten "shoulder-to-shoulder" plaintiffs, the instant complaint was filed against the Insurance Company in the same state court that had approved the settlement. Based on diversity, the Insurance Company timely and properly removed the case to this court.

In reality, the complaint here constitutes three separate actions. The eight former state court plaintiffs are suing as assignees of whatever contract claims against the Insurance Company the Authority has. They have no direct claim against the Insurance Company. The Authority is, first, suing on its insurance contract seeking to recover the costs of its state court defense, and to recover the amounts of the eight judgments entered against it. In the event of a recovery by the Authority against the Insurance Company for breach of contract, that recovery will go to the original eight plaintiffs to the extent necessary to extinguish, and to obtain satisfaction of, the eight judgments. Next, the Authority makes a claim against the Insurance Company for the tort of bad faith refusal to defend and to indemnify. This claim has viability only if there was no rational basis for the Insurance Company's refusal to defend and to indemnify. Kuhn sues the Insurance Company for the cost of the defense that the Insurance

8

Company failed to provide him and for the tort of bad faith refusal to defend him. Because Kuhn has paid nothing to the original plaintiffs, and has been released by them, he can make no claim of bad faith refusal to indemnify.

   The Insurance Company argues that it is entitled to summary judgment and seeks this court's recognition that it lacks any responsibility in the premises. Its whole argument is based on the express policy exclusions for the "wrongful acts" of "public officials." The eight original plaintiffs in the state court have not filed a separate motion for summary judgment, relying, as they should, upon the Authority's motion for summary judgment, which seeks a declaratory judgment that the Insurance Company was obligated to defend and to indemnify. The Authority and Kuhn acknowledge that Rule 56, F.R.Civ.P., does not provide a vehicle for determining the actual amount of money, if any, that the Insurance Company owes the Authority (and, indirectly, the original eight plaintiffs) for breach of contract. Neither the Authority nor Kuhn asks for summary judgment on the issue of whether the Insurance Company tortiously refused to defend and/or to indemnify.

   The first question to be answered is whether Kuhn's ostensible reliance upon the Authority's demand upon the Insurance Company was justified. The parties conspicuously have not briefed this question. The court finds that what Kuhn did or failed to do was reasonable under the circumstances. The Insurance Company was

9

adequately and properly notified of Kuhn's implicit claim for defense and indemnity. As an official, he had the right to ride the coattails of his employer. The Insurance Company had a copy of the state court complaint and knew that Kuhn was a named defendant. It also knew the state court plaintiffs' theories of liability and that any liability by the Authority was necessarily based on *respondeat superior.* The Authority could only act through human instrumentalities, one of whom was Kuhn. If the Authority was covered for any of Kuhn's allegedly tortious conduct, so was Kuhn. There might be a distinction between coverage for Kuhn for any intentional or fraudulent act and coverage for the Authority under *respondeat superior* for the simple negligence of other employees whose names were unknown. In any event, however, the Authority was charged with negligence.

The court has a hard time understanding the rationale of the Insurance Company for its denial of coverage, much less for denying any duty to provide a defense. The duty to defend is a very difficult obligation for an insurance company in Alabama to avoid. To accept the Insurance Company's argument in this case would, in this court's opinion, make this particular policy of insurance nearly, if not entirely, meaningless. The Insurance Company apparently is taking the position that **all** torts allegedly committed by the Authority and for which it could be liable under *respondeat superior*, are not covered by this policy, because **all** of

10

the Authority's torts are the "wrongful acts" of its "public officials." The Insurance Company says that it has defined itself out of any risk that a mistake by an agent of the insured would be covered.

Even if a deliberate, calculated, purposeful, malicious, discretionary, harmful act (such as a "conspiracy to create a flood-prone situation") is excluded from coverage, what about the clearly stated and straightforward claim of negligence made in the underlying complaint against the Authority and Kuhn? A casualty insurer, whether it is an insurance company or is something else, if it believes that certain claims being made against its insured are not covered by its policy, must nevertheless defend under a reservation of rights and depend for the ultimate resolution of the coverage question upon a later judicial resolution of the disputed issues of liability, seeking discreet determinations by a jury or court. This court fully recognizes the conflict-of-interest inherent in an insurer's providing a defense when some of the theories of liability or "counts" are covered and others arguably, or admittedly, are not. This is why any intelligent insured under such circumstances should always be expressly and unequivocally warned by the insurer of this conflict-of-interest, and should, if the insured has good sense, obtain separate counsel to look over the shoulder of the lawyer chosen by the insurer. The appropriate response by the insurer is not simply to give a lame excuse for not

11

defending at all and wash its hands of the whole affair.

The court has deliberately not mentioned the dispute between the parties over the alleged estoppel effect of the fact, if it be a fact, that the subject insurance policy was a replacement or renewal policy procured through the insurance agent who had sold the predecessor policy.  The court finds no need to agree with the Authority's position or with the Insurance Company's position on this disputed issue of fact and/or of law.  The court, instead, relies upon two rules of construction.  The first calls for an interpretation of a contract that gives it a legitimate purpose. A contract entitled "insurance policy," but that assumes no risk, does not make sense.  The second is that a contract that contains an ambiguity is to be construed against the drafting party.

Based on the foregoing, this court finds that this particular policy of insurance required the Insurance Company to defend and to pay some, if not all, of the claims being made against the Authority and Kuhn by the plaintiffs in the state court, to the extent plaintiffs should prevail.

This court does not decide the question of the Authority's right, by entering into the settlement agreement, to concede or to quantify its liability to the various state court plaintiffs and thereby to bind the Insurance Company.  The Insurance Company may or may not be obligated to pay the judgment amounts fixed by the consent decree.  The issue of the amounts due to the Authority

and/or to Kuhn for breach of contract, if any, remains for another day, as do the issues of bad faith.

An appropriate separate judgment will be entered.

DONE this 28th day of July, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE